IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARETTA BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1221 (MN) |
| | ) |
| HANOVER FOODS CORP., | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM ORDER</u>**

At Wilmington this 11th day of September 2020:

Presently before the Court is the motion (D.I. 31) of Defendant Hanover Foods Corp. ("Hanover" or "Defendant") for summary judgment on all claims in Plaintiff's Complaint (D.I. 1) – for FMLA interference (Count I), FMLA retaliation (Count II), for discrimination based on race, sex, disability, and age,[1] for a hostile work environment based on several factors, and for retaliation (the last three categories of claims are subsumed within Counts III and IV). Defendant's motion has been fully briefed (*see* D.I. 32-34, 38, 39, 41-44). For the reasons set forth below, Defendant's motion is GRANTED-IN-PART and DENIED-IN-PART.

1. Defendant argues for summary judgment on Plaintiff's FMLA interference and retaliation claims on the grounds that Plaintiff has not sufficiently established: for both claims, that she was entitled to FMLA leave; for her interference claim, that she gave Defendant notice of her right or intent to take FMLA leave; and for her retaliation claim, that she invoked her right to

---

[1] Plaintiff's discrimination claims based on age and disability are purportedly brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("the ADA"), the Age Discrimination in Employment Act ("the ADEA"), and Delaware Discrimination in Employment Act ("the DDEA"). (*See* D.I. 1 ¶¶ 44-60). Plaintiff's discrimination claims based on race and sex, hostile work environment claims, and retaliation claims are brought under Title VII and the DDEA. (*Id.*).

FMLA leave and there is a causal connection between her taking of such leave and her termination. (D.I. 32 at 8-10). Genuine disputes of material fact on those issues, however, precludes summary judgment on either count.[2]

2.  A claim for FMLA interference or retaliation requires, *inter alia*, a right to FMLA leave. *E.g.*, *Schaar v. Lehigh Valley*, 598 F.3d 156, 158 (3d Cir. 2010). Unless hospitalized for in-patient care, qualifying for such leave requires the employee to have a "serious health condition" involving "continuing treatment by a healthcare provider," 29 C.F.R. § 825.113(a), which, in turn, requires, *inter alia*, a "period of incapacity of more than three consecutive, full calendar days" *id.* § 825.115, where "calendar day" means the period from one midnight to the next, *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1343 (11th Cir. 2003) ("A 'calendar day' thus refers to a whole day, not part of a day, and it takes some fraction more than three whole calendar days in a row to constitute the 'period of incapacity' required . . . ."). "[A]n employee may satisfy her burden of proving three days of incapacitation through a combination of expert medical and lay testimony." *Schaar*, 598 F.3d at 161.

3.  Plaintiff's medical evidence establishes that she was unable to work on part of December 25, 2017, as well as all of December 26 and 27, 2017.[3] Additionally, her lay testimony establishes that she informed her H.R. supervisor that she "would still be out until <u>after</u> the 28th." Butler Deposition at 103:2-12 (D.I. 39, Ex. B at 26). Although Plaintiff also stated in her

---

[2]   *See Sullivan v. Hanover Foods Corp.*, C.A. No. 18-803, 2020 WL 211216, at *2 (D. Del. Jan. 14, 2020) (providing legal standard for evaluating motions for summary judgment in similar case).

[3]   (*See, e.g.*, D.I. 34 at A66 (doctor's note stating: "Aretta Butler was seen and treated in our emergency department on 12/25/2017. She may return to work on 12/27/17."); *id.* at A72 (doctor's note stating: "Aretta Butler was seen and treated in our emergency department on 12/26/2017. She may return to work on 12/28/17.").

deposition that she informed the same H.R. supervisor that she "wouldn't be back in <u>until</u> the 28th," *id.* at 98:17-21 (D.I. 39, Ex. B at 25), weighing the import of these contrary statements and other relevant evidence is a matter for a jury, *Sullivan v. Hanover Foods Corp.*, C.A. No. 18-803, 2020 WL 211216, at *2 (D. Del. Jan. 14, 2020) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  Thus, a genuine dispute of material fact remains regarding whether Plaintiff was entitled to FMLA leave. *See Schaar*, 598 F.3d at 161 (finding genuine issue of material fact regarding whether plaintiff qualified for FMLA leave based on expert medical testimony that plaintiff was incapacitated for two days and plaintiff's lay testimony that she was incapacitated for additional two days).

       4.       A claim for FMLA interference also requires an employee to establish that "she gave notice to Defendant of her intention to take or continue FMLA leave." *Sullivan*, 2020 WL 211216, at *18 (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)).  Although the evidence appears to indicate that Plaintiff did not provide Defendant her emergency room doctor's notes until she returned to work on January 2, 2018, (*see, e.g.*, D.I. 32 at 9), at least the Eighth Circuit has indicated that an employer cannot escape liability for FMLA interference by terminating an employee before receiving their FMLA paperwork when they are on notice that the employee may be entitled to FMLA leave.  *See Phillips v. Matthews*, 547 F.3d 905, 910 (8th Cir. 2008).  Moreover, even if Defendant could, the various calls Plaintiff exchanged with her supervisors and H.R. representative indicate she informed them of those visits and her injuries on December 25 and 26, 2017.  (*See, e.g.*, Butler Dep. at 98:17-21, 103:2-12 (D.I. 39, Ex. B at 25-

26). That is enough to create a genuine issue of material fact regarding whether she provided sufficient notice. *See Sullivan*, 2020 WL 211216, at *19 (citations omitted).[4]

        5.        In addition to proving a right to FMLA leave, an employee bringing an FMLA retaliation claim must establish that she invoked her right to FMLA leave, subsequently suffered an adverse employment action, and that adverse employment action "was causally related to her invocation of rights." *Sullivan*, 2020 WL 211216, at *20. For the same reasons there is a genuine dispute of material fact regarding whether Plaintiff gave sufficient notice of her intent to take FMLA leave for purposes of her interference claim, there is a genuine dispute of material fact regarding whether she invoked her right to FMLA leave for purposes of her retaliation claim. *See id.* Additionally, termination is an adverse employment action and the temporal proximity between Plaintiff's notice of her right to FMLA leave and her subsequent termination – at most, three days – constitutes "unusually suggestive" timing that is sufficient to evidence a causal relationship between the two at this stage. *Id.* (six days deemed sufficient (citing *Lichtenstein v. UPMC*, 691

---

[4]    *See also Lichtenstein v. UPMC*, 691 F.3d 294, 303 (3d Cir. 2012) ("To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave. 29 U.S.C. § 2612(e)(2). In doing so, the employee 'need not expressly assert rights under the FMLA or even mention the FMLA.' 29 C.F.R. § 825.303(b). When the leave is unforeseeable, the employee's obligation is to 'provide sufficient information for an <u>employer</u> to reasonably determine whether the FMLA may apply to the leave request.' *Id.* (emphasis added). As we have previously noted, this is not a formalistic or stringent standard. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating that the statutory and regulatory text suggests a 'liberal construction' be given to FMLA's notice requirement); *see also Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 474 (8th Cir. 2007) ('The regulations already make it very easy for [an employee] to give notice of her intent to take leave.'); *Burnett v. LFW, Inc.*, 472 F.2d 471, 478 (7th Cir.2006) ('The notice requirements of the FMLA are not onerous.').").

F.3d 294, 303-04 (3d Cir. 2012) (six days deemed sufficient); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days deemed sufficient))).[5]

6. Next, Defendant argues for summary judgment on Plaintiff's discrimination claims on various grounds. (D.I. 32 at 10-15). To establish a claim for discrimination, Plaintiff must either present sufficient direct or circumstantial evidence that Defendant placed substantial reliance on a proscribed discriminatory factor in making its decision to take adverse employment action against her or present (as a first step) evidence indicating that she engaged in protected activity, suffered an adverse employment action contemporaneous with or after engaging in that protected activity, and a causal link exists between the protected activity and the adverse employment action. *Sullivan,* 2020 WL 211216, at *6-7, 10-11.

7. To the extent the Complaint asserts Title VII and DDEA discrimination claims based on disability, age, and sex, those are abandoned because Plaintiff fails to point to any facts establishing those claims and, in fact, fails to respond at all to Defendant's arguments in favor of summary judgment on those claims. (*See* D.I. 38-39). *Blakeman v. Freedom Rides, Inc.*, C.A. No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("[W]here a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to

---

[5] Defendant also states, in the same paragraph where it argues that "Plaintiff's retaliation claim fails because she never invoked her right to FMLA leave": "Moreover, a plaintiff cannot allege that she was denied access to FMLA rights by not receiving proper notice, and then retaliated against for exercising rights protected by the FMLA." (D.I. 32 at 10 (citing *Reid-Falcone v. Luzerne Cty. Cmty. Coll.*, C.A. No. 02-1818, 2005 WL 1527792, at *9 (M.D. Pa. June 28, 2005))). Not only is this argument unexplained, it appears to misconstrue the case cited and to be inapplicable. The relevant section of *Reid-Falcone* essentially stands for the unsurprising proposition that plaintiff cannot base an FMLA retaliation claim on leave she explicitly acknowledges she knew was non-FMLA leave. *Reid-Falcone*, 2005 WL 1527792, at *8-9. Defendant does not argue that the same is true here.

the motion, courts have consistently held that the claims that are not defended are deemed abandoned." (citations omitted)) (report and recommendation, later adopted (*see id.* D.I. 35)).

8. To the extent the Complaint asserts discrimination claims based on race, no genuine issue of material fact remains. For such claims, Plaintiff largely cites the same evidence this Court rejected in *Sullivan*. *Compare Sullivan*, 2020 WL 211216, at *10-14, *with* D.I. 39 at 13. For many of the same reasons it was insufficient there, it is insufficient here – namely, none of the evidence presented involves or relates to Plaintiff or an adverse employment action taken against her and none of the events surrounding Plaintiff's termination suggest that her firing was motivated or impacted by racial bias, nor do they give rise to an inference that Plaintiff's termination was animated by intentional racial discrimination. *Id.* The one additional piece of evidence offered here – the text conversation between Plaintiff's H.R. representative and her supervisor – does not change this, as there is no indication in that conversation of a racial animus.

9. Next, Defendant asserts several arguments for summary judgment on Plaintiff's hostile work environment claims. To prove such claims under Title VII and the DDEA, "Plaintiff must establish: (a) she suffered intentional discrimination because of her membership in a protected class; (b) the discrimination was severe or pervasive; (c) the discrimination detrimentally affected her; (d) the discrimination would detrimentally affect a reasonable person in like circumstances; and (e) Defendant is liable for the discrimination she suffered under the doctrine of respondeat superior." *Sullivan*, 2020 WL 211216, at *16.

10. To the extent the Complaint asserts hostile workplace claims based on any basis other than race, those are abandoned because Plaintiff fails to point to any facts establishing those claims and, in fact, fails to respond at all to Defendant's arguments in favor of summary judgment on those claims. (*See* D.I. 38-39); *see also Blakeman*, 2013 WL 3503165, at *13.

11. To the extent the Complaint asserts hostile work environment claims based on race, no genuine issue of material fact remains. Defendant asserts that, unlike in *Sullivan*, Plaintiff "has not adduced any evidence that the alleged discriminatory conduct had a detrimental impact on her." (D.I. 32 at 16 (emphasis added)). Although Plaintiff cites several exhibits in rebuttal, none of those exhibits indicates that Plaintiff, as opposed to someone else, suffered a detrimental impact from the purportedly hostile racial work environment.[6]

12. Finally, Defendant challenges Plaintiff's retaliation claims. To the extent her Complaint makes out such claims, no genuine disputes of material fact remain. Title VII prohibits retaliation by making it unlawful for employers to discriminate against "any of his employees . . . because he has opposed any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Thus, "[t]o establish a *prima facie* case of retaliation, a plaintiff must proffer evidence to show that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action." *Collins v. Kimberly-Clark Pa, LLC*, 708 F. App' 48, 54 (3d Cir. 2017) (citing *Moore v. City of*

---

[6] *See* D.I. 39 at 14 (citing Ex. C (Affidavit of Kisha Dickson describing general discrimination at Clayton Plant and specifically calling out particular supervisors and treatment of, *inter alia*, Darlene Sullivan, but not mentioning Plaintiff); Ex. D (Affidavit of Pamela Joseph describing general discrimination at Clayton Plant and specifically calling out particular supervisors and treatment, but not mentioning Plaintiff); Ex. E (Meeting Minutes from Fred Williamson Grievance Meeting describing various complaints of discrimination at Clayton Plant, but not mentioning Plaintiff); Ex. F (Charge of Discrimination filed by Clayton Plant employee Valerie Savage describing discrimination of her, but not mentioning Plaintiff); Ex. G (Charge of Discrimination filed by Clayton Plant employee Darlene Sullivan describing discrimination of her, but not mentioning Plaintiff); Ex. J (Charge of Discrimination filed by Plaintiff detailing various allegations of mistreatment, but not alleging that she was detrimentally impacted by racially hostile workplace).

*Philadelphia*, 461 F.3d 331, 341042 (3d Cir. 2006)).  If a *prima facie* case is made, Defendants have the opportunity to set forth a legitimate, non-discriminatory reason for the adverse employment action taken (here, termination).  If they succeed, the question is whether Plaintiff has established that Defendant's asserted reason is pretextual.  *Sullivan*, 2020 WL 211216, at *6-7.

13. Defendant asserts that Plaintiff has not satisfied the first or third of the *prima facie* elements.  (D.I. 32 at 17-18).  Plaintiff argues that she has satisfied the first because she "was a union steward responsible for helping other employees lodge complaints against [Defendant]" and "was [the] union steward who helped Ms. Sullivan lodge her discrimination complaints."  (D.I. 39 at 15).  Plaintiff, however, fails to cite any evidence to support these allegations and the Court is unsure to what complaints she is referring.

14. In its reply, Defendant attaches certain "grievances" from the record in *Sullivan*, (*see* D.I. 41 at 7 (citing D.I. 42 at C1-6)), one of which facially alleges a Title VII issue, (*see* D.I. 42 at C4), but the Court does not know if these are the "complaints" Plaintiff mentions.  Indeed, they are each labeled "Grievance Reporting Form" and Plaintiff references "complaints."

15. Even if the grievance forms Defendant placed before the Court were sufficient to satisfy the first *prima facie* element, however, Plaintiff has also failed to satisfy the third.  To establish the necessary causal connection between her involvement with those forms and her termination, Plaintiff asserts the following evidence: a handwritten note "reflect[ing] that someone in the HR department had a grudge against Ms. Sullivan for filing too many discrimination complaints"; the fact that Plaintiff was terminated on the same day as Sullivan, allegedly by the same H.R. representative, for the same reason ("no call, no show"); the discussed text message conversation between Plaintiff's supervisor and H.R. representative in which they "decide to schedule Plaintiff for more shifts while not returning her calls"; and various evidence indicating a

general retaliatory animus at the Clayton Plant towards employees who complained about discrimination. (D.I. 39 at 15; *see also* D.I. 38 ¶¶ 48-57). She also argues that causation is supported by her allegation that the Clayton Plant's H.R. department "ma[de] nonsensical interpretations of FMLA." (D.I. 39 at 15). Contrary to cases like *Sullivan*, however, none of this evidence indicates a retaliatory animus toward Plaintiff, let alone a retaliatory animus toward Plaintiff based on her assisting with the filing of complaints or grievances, for Ms. Sullivan or anyone else. *See Sullivan*, 2020 WL 211216, at *7-8.

16. As such, Defendant is entitled to summary judgment on Plaintiff's discrimination, hostile work environment, and retaliation claims (Counts III and IV), but is not entitled to summary judgment on her FMLA interference or retaliation claims (Counts I and II).

THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED-IN-PART and GRANTED-IN-PART.

_____
The Honorable Maryellen Noreika
United States District Judge